## K. Nakamoto *v.* United States

**No. 5743.**—Invoice dated Hiroshima, Japan, August 3, 1939.
        Certified August 7, 1939.
        Entered at Hilo, T. H., August 28, 1939.
        Entry No. A–51.

(Decided October 21, 1942)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney),
for the defendant.

Dallinger, Judge: This appeal to reappraisement involves the
value of certain Japanese merchandise described on the invoice as
"Hokkigai Boiled" canned shell fish.

The merchandise was invoiced at the units of 26.50 Japanese yen
per case of "8 Doz. of 4-3/5 oz." tins and 24.50 Japanese yen per case
of "4 Doz. of 9-oz." tins. Entry under duress was made under the
provisions of section 503 (b) of the Tariff Act of 1930 at the corre-
sponding American selling prices of 7.7815 and 6.895 per case. Ap-
praisement was made on the basis of the values as entered.

The entry and appraisement herein were predicated upon the follow-
ing proclamation of the President of the United States dated May 1,
1934, and promulgated as T. D. 47031:

By the President of the United States of America

,A PROCLAMATION

Whereas under and by virtue of section 336 of title III, part II, of the act of
Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "AN ACT To pro-
vide revenue, to regulate commerce with foreign countries, to encourage the
industries of the United States, to protect American labor, and for other pur-
poses", the United States Tariff Commission has investigated the differences in
costs of production of, and all other facts and conditions enumerated in said section
with respect to, clams, packed in air-tight containers, being wholly or in part the
growth or product of the United States and of and with respect to like or similar
articles wholly or in part the growth or product of the principal competing
countries;

Whereas in the course of said investigation a hearing was held, of which reason-
able public notice was given and at which parties interested were given reasonable
opportunity to be present, to produce evidence, and to be heard;

Whereas the Commission has reported to the President the results of said
investigation and its findings with respect to such differences in costs of production;

Whereas the Commission has found it shown by said investigation that the
principal competing country for razor clams (siliqua patula), packed in air-tight
containers, is Canada, and that the duty expressly fixed by statute does not
equalize the difference in the costs of production of the domestic articles and the
like or similar foreign articles when produced in said principal competing country;
and that the principal competing country for clams other than razor clams, and

clams in combination with other substances (except clam chowder), packed in air-tight containers, is Japan, and that said difference with respect to these articles cannot be equalized by proceeding under the provisions of subdivision (a) of said section and act;

WHEREAS the Commission has specified in its report the decreased rate of duty on razor clams (siliqua patula), packed in air-tight containers, and the ad valorem rate of duty based on the American selling price, as defined in section 402 (g) of said act, of the domestic articles, on clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers, found by the Commission to be shown by said investigation to be necessary to equalize such differences in costs of production; and

WHEREAS in the judgment of the President such decreased rate of duty and such ad valorem rate of duty based upon said American selling price are shown by such investigation of the Tariff Commission to be necessary to equalize such differences in costs of production;

NOW, THEREFORE, I, FRANKLIN D. ROOSEVELT, President of the United States of America, do hereby approve and proclaim a decrease in the rate of duty expressly fixed in paragraph 721 (b) of title I of said act on razor clams (siliqua patula), packed in air-tight containers, from 35 per centum ad valorem to 23 per centum ad valorem; and assessment of the rate of 35 per centum ad valorem expressly fixed in said paragraph, title, and act on clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers, upon the American selling price, as defined in section 402 (g) of said act, of clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers, manufactured or produced in the United States.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the United States to be affixed.

DONE at the City of Washington this 1st day of May, in the year of our Lord nineteen hundred and thirty-four, and of the Independence of the [SEAL] United States of America the one hundred and fifty-eighth.

FRANKLIN D. ROOSEVELT.

By the President:
CORDELL HULL,
    *Secretary of State.*

Plaintiff claims that the merchandise involved herein is not a clam for tariff purposes and therefore is not covered by the above-quoted T. D. 47031, and that the merchandise should be appraised upon the basis of foreign value, export value, United States value, or cost of production.

The issue therefore is whether this shellfish, apparently described by the word hokki or hokkigai, is or is not a "clam."

Counsel for the defendant objected to the introduction of any testimony affecting the classification of this merchandise, claiming that this action involves the question of value on reappraisement and that no evidence on classification is material. Such objection was overruled and an exception allowed.

In the case of *A. Hauptmann, Inc.* v. *United States*, Reap. Dec. 3934, the Third Division of this court said:

It is obvious that the appraiser, in proceeding to appraise merchandise, must investigate and make a decision as to all factors that determine the legal basis of

appraisement. When imported merchandise, of a character which might be susceptible to appraisement under the American selling price provision in paragraph 27 or 28, comes before him for appraisement, the appraiser must first determine whether the merchandise is composed of the materials provided for under said paragraphs. Such determination by the appraiser is purely an incident to appraisement and, as such, is reviewable in reappraisement proceedings, as his decision in that regard fixes the value upon which duty must be taken.

That decision was affirmed without opinion by the Court of Customs and Patent Appeals in *United States* v. *A. Hauptmann, Inc.*, 25 C. C. P. A. 323, T. D. 49423.

The evidence in this case consists of the testimony of four witnesses, two on behalf of the plaintiff and two on behalf of the defendant; a sample of the imported merchandise (plaintiff's exhibit 1), the contents of which were removed and placed in a glass jar and identified as plaintiff's exhibit 1–A; a publication entitled "The Edible Bivalves of California" by Paul Bonnot (plaintiff's exhibit 2); a book entitled "Fish and Game Code, 1939–1941" issued by the State of California, Department of Natural Resources, Division of Fish and Game (plaintiff's exhibit 3); and a photograph of the shell of the merchandise Doctor Kincaid (one of the witnesses herein) saw in Japan (defendant's illustrative exhibit A).

All four witnesses in this case gave sufficient testimony as to the extent of their education, the type of work they had been engaged in, the period of time they had been so engaged, and the articles or papers that they had written to sufficiently qualify them to testify scientifically.

Plaintiff's first witness Harold Heath testified in substance that in his opinion the imported merchandise is a *cardium* or cockle, cockle being the common word and *cardium* being the scientific term; that he had no knowledge of what commercial men do; that the word "clam" is a rather indefinite term used colloquially by laymen but not used by biologists or scientists; and if he were to sell merchandise like that involved herein he "would call it a clam." He further testified:

R.X Q. Would you have to see the shells in order to determine definitely whether or not it is a clam or a cockle?—A. It would be rather difficult to say. I don't know.

X Q. Can you state, without having the shell, definitely state that the article in Exhibit 1 which was exhibited to you is what is commonly known or not known as a clam? * * *—A. I would not say it is a clam.

By Mr. Spector:

R. X Q. Would you say it is not a clam?—A. Well, I don't know.

Plaintiff's second witness, G. Dallas Hanna, testified in substance that the word "clam" has no definite meaning to him as a scientist and that it is a vernacular term the meaning of which varies in different parts of the United States.

Defendant's first witness, Wilbert McCleod Chapman, testified in substance that the word "clam" is not a scientific word; that the word "clam" is applied to different mollusks in different parts of this country; and that exhibit 1 is a clam.

Defendant's second witness, Trevor Kincaid, testified in substance that he had spent the greater part of a year in Japan in 1928, where he had observed and studied all the great collections of mollusks in the museums there, and had made a collection of mollusks to bring back to his university; that he had studied and dug the hokkigai clam; that it is a common clam in the northern part of Japan; that he is thoroughly familiar with it; that plaintiff's exhibit 1–A is a clam; that it is known scientifically as the *mactridae-sachalinensis*; that it is known colloquially as the hokki or hokkigai clam; and that the word "clam" is rather a broad term, strictly speaking not a scientific word but rather a general term.

The scientific witnesses in this case agree that the word "clam" is not a scientific word and has no definite scientific meaning. The common meaning of the word "clam" is thus defined in Webster's New International Dictionary 2d. ed.:

*clam* 1. Any of various bivalve mollusks, esp. of certain edible kinds * * *.

The flexible tariff provisions, as used in this instance, are intended to meet and correct an adverse competitive condition.

It is very significant that the label of the imported merchandise advertises the goods as "Geisha Brand Hokki Clams," and in addition carries a picture that no doubt, to the layman or shopping housewife, would appear to characterize two clam shells.

It is a well-established rule of construction that when Congress, in writing the tariff act, uses a word having a common meaning, without any further qualifications, that there is no need to go beyond such common meaning, unless such word is shown to have a different commercial meaning. This record contains no proof whatever as to commercial meaning.

The same rule would apply when the President of the United States uses a word quoted from and applied to the tariff act, such as the use of the word "clams" in T. D. 47031.

Whether or not the imported merchandise is a clam or a cockle, in the terminology of science, is unnecessary for me to determine, for the reason that the word "clam" has a common meaning and that I am firmly convinced that the importation herein comes within the definition of such meaning, and also for the reason that when this merchandise was imported it was beyond a doubt intended that it enter the commerce of the United States as a clam.

Upon all the facts and the law, I therefore find the American selling price, as that value is defined in section 402 (g) of the Tariff Act of

1930, to be the proper basis for the determination of the value of the merchandise here involved, and that such values are the appraised values.

Judgment will be rendered accordingly.